UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SIMON SAMANDAROV,

                Petitioner,

  -against-

WILLIAM LEE,

                Respondent.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-599 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Before the court is Petitioner Simon Samandarov's application for a writ of habeas corpus ("Application"). (Docket Entry # 1.) Samandarov challenges his state court conviction for, among other offenses, Attempted Murder in the Second Degree. Because Samandarov's claims are either procedurally defaulted or without merit, the Application is DENIED.

## Background

    On February 1, 2005, a jury convened in New York Supreme Court, Queens County, found Simon Samandarov guilty of Attempted Murder in the Second Degree, Assault in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and two counts of Criminal Possession of a Weapon in the Third Degree (see Trial Tr. (Docket Entry # 7-4) at 889-90) in connection with the shooting of Alik Pinhasov. During the trial, the jury heard testimony from, among other people, the victim, Pinhasov, who identified Samandarov as the shooter. (See id. (Docket Entry # 7-2) at 330-35.) It also heard testimony from a bystander, Jose Ramirez, who witnessed the aftermath of the shooting from an apartment overlooking the crime scene. (See id. (Docket Entry # 7-4) at 649-75.) Ramirez testified that he heard gun shots,

1

looked through his apartment window, and saw a large man in black pants and a long black coat waiving a gun in the air. (See id. at 655-58.) A police officer who responded to the shooting testified that Samandarov, whose bulk was noted throughout the trial, was wearing black pants and a long black coat and was carrying a pistol when he was arrested. (See id. (Docket Entry # 7-2) at 253-55.) Ramirez also testified that the police came to his apartment immediately after the shooting and conducted an interview. (See id. (Docket Entry # 7-4) at 674-78.)

The jury was made aware that Samandarov, Pinhasov, and two other men who were arrested at the crime scene, Samandarov's half-brother, Eduard Davydov, and Pinhasov's cousin, Boris Pinhasov, were all native Russian speakers. (Voir Dire Tr. (Docket Entry # 7) at 49; Trial Tr. (Docket Entry # 7) at 197.) Before trial, Samandarov's counsel asked the members of the jury if any of them had "any preconceived ideas of Russians, of Russian People?" (Voir Dire Tr. at 154.) He then elaborated, stating:

> You know, growing up an Italian-American, every time I turn on the T.V. there was some other mob show. And you know sometimes there is a perception in the general public that all, well, if you are a member of this group you must be involved in some sort of illegal activity or you must be this stereotype because the media does tend to stereotype.

(Id.) Later, while cross-examining Pinhasov, Samandarov's counsel asked, "Now, Mr. Pinhasov, have you ever been indicted or questioned by the authorities for your involvement in any money laundering scheme?" (Trial Tr. (Docket Entry # 7-3) at 444.) An objection to the question was sustained, but Samandarov's counsel persisted, asking: "Have you ever committed money laundering? Have you ever engaged in loan sharking?" (Id. at 445.)

After the verdict, but before sentencing, Samandarov made a motion pursuant to § 330.30(2) of the New York Criminal Procedure Law to set aside the jury's verdict because of

juror misconduct ("§ 330 motion"). (See Aff. in Supp. of N.Y. Crim. Proc. § 330.30 Mot. (Docket Entry # 6).) According to an affirmation by Samandarov's counsel, "several if not all members of the jury were of the opinion that the defendant was involved with the so-called "Russian Mob"—a belief that the jurors discussed during the trial and which infected their ability to hear and deliberate impartially and fairly." (Id. ¶ 9) For support, counsel attached a newspaper article from the New York Daily News and an article from the New York Times. Both articles mentioned the execution-style killing of Eduard Nektalov, another one of Pinhasov's cousins; and the Daily News article claimed that jurors were aware that Samandarov and Pinhasov may have had connections to organized crime. Samandarov's counsel averred that he had confirmed the facts of the Daily News article with the story's author, and added:

> as coincidence would have it, your affirmant received a phone call from a neighbor two days after the verdict in which I was told that Juror # 1, Ms. Dorothy McNulty (a co-worker of my neighbor) had discussed the jury experience with her fellow employees and again acknowledged that the jury talked about the defendant's involvement with the Russian Mob . . ..

(Id. ¶ 10.)

The court denied the § 330 motion without a hearing. (Sentencing Tr. (Docket Entry # 6) at 2-5.) The court noted that Samandarov's papers contained nothing more than hearsay allegations, and that, in any event, there was no indication that the jury was exposed to any off-the-record evidence. (Id.) It also reminded Samandarov's counsel that any on-the-record allusions to organized crime came from the defense itself. (See id.)

Samandarov was sentenced principally to twenty years in prison. (See id. at 21.)

In September 2006, Samandarov, now with new counsel, filed a motion pursuant to § 440.10 of the New York Criminal Procedure Law to vacate his conviction ("§ 440 motion").

3

Samandarov claimed that the prosecution committed a "Rosario violation" by failing to disclose certain pre-trial recorded statements by Ramirez. (See Mem. of Law in Supp. of N.Y. Crim. Proc. Law § 440.10 Mot. (Docket Entry # 6) at 1-2.) New York law—first articulated in People v. Rosario, 173 N.E.2d 881 (N.Y. 1961)—requires that the prosecution disclose all relevant recorded statements by witnesses that it intends to call at trial. See N.Y. Crim Proc. Law § 240.45(1)(a). In support of his claim, Samandarov attached an affidavit signed by Ramirez that stated that uniformed police officers and detectives came to his apartment twice after the shooting ("first Ramirez affidavit"). (See Aff. of Jose Ramirez of Dec. 14, 2005 (Docket Entry # 6-2).) According to the first Ramirez affidavit, these officers were accompanied by members of the Queens County District Attorney's Office ("D.A.'s Office") and, on both occasions, a detective took handwritten notes. (See id.)

The State opposed the § 440 motion. It denied the existence of any undisclosed Rosario material, and denied that Ramirez had ever been visited by police officers apart from his initial interview on the night of the shooting. (See Aff. in Opp'n to § 440.10 Mot. (Docket Entry # 6-2) at 2-3.) The State provided a second, subsequent, affidavit signed by Ramirez that disavowed the contents of the first Ramirez affidavit ("second Ramirez affidavit"). (See Aff. of Jose Ramirez of Nov. 13, 2006 (Docket Entry # 6-2).) According to the second Ramirez affidavit, female officials from the D.A.'s Office came twice to his apartment before the trial, but no police officers were present and nobody who was there took notes. (See id. ¶¶ 3-4.) Ramirez explained that he only signed the first Ramirez affidavit because a private investigator hired by Samandarov pressured him to do so. (See id. ¶ 5.) The State also included an affirmation by an Assistant District Attorney ("ADA"), and affidavits by a paralegal and an investigator from the D.A.'s

Office. All three women averred that they had visited Ramirez at least once. (See Aff. of Catherine Kane (Docket Entry # 6-2) ¶ 4; Aff. of Elizabeth Curcio (Docket Entry # 6-2) ¶ 2; Aff. of Joanna Fiorentini (Docket Entry # 6-2) ¶ 2.) The ADA and the investigator stated that they met with Ramirez twice. (See Aff. of Catherine Kane ¶ 4; Aff. of Elizabeth Curcio ¶ 2.) All three women denied taking notes. (See Aff. of Catherine Kane ¶ 5; Aff. of Elizabeth Curcio ¶ 3; Aff. of Joanna Fiorentini ¶ 3.) The State also supplied the time logs of the ADA and the investigator that documented their visits to Ramirez's apartment (see Ex. H to Aff. in Opp'n to § 440.10 Mot (Docket Entry # 6-2)), and police paper work that shows the case as closed in 2003 (see Ex. J to Aff. in Opp'n to § 440.10 Mot (Docket Entry # 6-2)).

By written order, the court denied the § 440 motion without a hearing. (See N.Y. Sup. Ct. Order of Dec. 12, 2006 (Docket Entry # 6-2).) It found that there was no question of material fact about the existence of undisclosed Rosario material—none existed. (See id. at 2-3.) The court found that the content of the second Ramirez affidavit was corroborated by the State's other evidence, and it credited Ramirez's explanation for the discrepancy between his two affidavits. (See id. at 2.) The court noted that the events recounted in the first Ramirez affidavit were inconsistent with police practice in that it would be unusual for the police to conduct a follow-up interview with a witness after a criminal case was closed. (See id.)

Samandarov was granted leave to appeal the § 440.10 decision to the Appellate Division, which consolidated it with Samandarov's as yet unperfected direct appeal. There, he raised three claims: (1) that the motion court had erred by denying the § 440 motion without a hearing; (2) that the sentencing court had erred by denying the § 330 motion without a hearing; and (3) that the jury's verdict on the attempted murder charge was against the weight of evidence. (See Def.-

5

Appellant's Br. (Docket Entry # 6-2).) The Appellate Division rejected all of Samandarov's claims. See People v. Samandarov, 867 N.Y.S.2d 497, 497-98 (App. Div. 2d Dep't 2008).

Samandarov then petitioned for leave to appeal the § 330 motion and § 440 motion issues to the New York Court of Appeals. (See Application for Leave to Appeal (Docket Entry # 6-3).) He did not seek to appeal further the weight-of-evidence claim. The Court of Appeals took the appeal and affirmed the lower courts' decision. See People v. Samandarov, 920 N.E.2d 930 (N.Y. 2009). The judges agreed that it was not an error for the sentencing court to deny the § 330 motion without a hearing. See id. at 933. They split, however, on the question of whether the motion court should have held a hearing on the § 440 motion. The majority concluded that the evidence strongly suggested that no undisclosed Rosario material existed, and that the motion court's denial of the § 440 motion without a hearing was not an abuse of discretion. See id. at 934. Chief Judge Lippman, joined by Judge Pigott, dissented from this portion of the opinion. For the dissenters, the differences between Ramirez's two affidavits created an issue of fact sufficient to require an evidentiary hearing under the relevant New York law. See id. at 936-38 (Lippman, C.J., dissenting in part).

Following the Court of Appeals decision, Samandarov timely filed the Application.

## Discussion

### Standard of Review

Section 2254 of Title 28 affords relief only to prisoners held in custody by a state government in violation of the United States Constitution or other federal law. 28 U.S.C. § 2254(a). Thus, the federal courts will only consider § 2254 claims that are based exclusively on federal law.

With a few exceptions not relevant here, every claim that a prisoner makes in his § 2254 application must have been first raised in state court. See id. § 2254(b) and (c). The prisoner does not need to have cited "book and verse" on federal law, see Picard v. Connor, 404 U.S. 270, 278 (1971), but "the nature or presentation of a claim must have been likely to alert the [state] court to the claim's federal nature," Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 192 (2d Cir. 1982) (en banc). It is not enough that a prisoner has brought a habeas claim to one state court's attention. Rather, he must have fully exhausted the claim. See 28 U.S.C. § 2254(b) and (c). This means he must have attempted to raise the claim in all available state forums, including the state court of last resort. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-40 (1999). If a prisoner did not first fully litigate his § 2254 claims in state court, but the opportunity to do so has passed—if, for example, the time to file a state-court appeal has run—then those claims are said to be "procedurally defaulted" and relief is precluded.[1] See id. at 848.

Where a prisoner has exhausted a claim, the court must then determine whether the claim was "adjudicated on the merits" by the state court. See 28 U.S.C. § 2254(d). A state court adjudicates a claim on the merits where it disposes of the claim on the merits and reduces that disposition to judgment. Sellen v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). The court need not expressly refer to the claim's federal nature nor rely on federal law. Id.

A state court decision on the merits is subject to extraordinarily deferential review by the federal courts. See Hardy v. Cross, 132 S. Ct. 490, 491 (2011); Bobby v. Dixon, 132 S. Ct. 26,

---

[1] Note the difference between an unexhausted claim and a procedurally defaulted claim. With an unexhausted claim, a prisoner may return to state court, exhaust his claim, and—if he does not obtain relief there—raise the claim again in a § 2254 application. If a claim is procedurally defaulted, it is lost forever.

7

27 (2011). For example, a state court's conclusions and applications of federal law are binding in a § 2254 proceeding unless they conflict with "clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). State court findings of fact are similarly insulated from hard scrutiny. Such findings are not to be disturbed unless they were "unreasonable . . . in light of the evidence presented in the State court proceeding." See id. § 2254 (d)(2).

In sum, a prisoner in Samandarov's position cannot hope to obtain relief from a federal court unless his § 2254 claims have been fully exhausted in the state courts, and are based on a blatantly erroneous state court ruling or application of federal law. It is no surprise that these applications are seldom granted.

**Claims**

Samandarov raises three claims in his Application.

First, he renews the argument that the jury's verdict on the attempted murder charge was "against the weight of evidence." (See Application at 9.) This claim is procedurally defaulted because it was abandoned when Samandarov sought leave to appeal the Appellate Division's decision to the Court of Appeals. (Cf. Application for Leave to Appeal at 1-2 (listing the only "Issues of Law Presented for Review" as those pertaining to the § 330 motion and § 440 motion motions).) Moreover, even if it were not defaulted, the claim is based exclusively on state law, see Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001), and accordingly could not provide basis for relief in a § 2254 proceeding. The claim is DENIED.

Next, Samandarov claims that juror speculation about his possible ties to organized crime denied him a fair trial. (See Application at 7.)

8

Juror misconduct can affect a criminal defendant's federal constitutional rights. See Loliscio v. Goord, 263 F.3d 178, 185 (2d Cir. 2005). Specifically, a jury's consideration of incriminating evidence not presented at trial can lead to a violation of a defendant's right to a jury trial and his right to confront witnesses, both of which are guaranteed by the Sixth Amendment. See id. Samandarov contends, as he did in state court, that some of the jurors must have been exposed to newspaper articles linking the Pinashov shooting to the allegedly Russian-mafia-related murder of Eduard Nektalov. The implication is that these outside sources influenced the jury's verdict. Such a claim is clearly rooted in the Sixth Amendment.

Samandarov presented the juror misconduct claim at each level of his state court proceedings. It formed the basis of the § 330 motion (see Aff. in Supp. of N.Y. Crim. Proc. § 330.30 Mot.) and Samandarov pursued it in his appeals to the Appellate Division (see Def.-Appellant's Br. at 40-50) and the Court of Appeals (Appellant's Br. (Docket Entry # 6-4) at 40-50). While Samandarov focused only on the effect of the alleged jury misconduct on his state-law rights, the nature of the claim places it squarely within the mainstream of federal constitutional litigation.

The motion court rejected the juror misconduct claim on merits (see Sentencing Tr. at 2-5), as did both appellate courts once the issue was raised on appeal, See Samandarov, 867 N.Y.S.2d at 497-98; Samandarov, 920 N.E.2d at 932-33.

Such a result is not an contrary to, or an unreasonable application of, clearly established federal law. One critical element of this type of juror misconduct claim is that the jury actually have contact with outside material. See Loliscio, 263 F.3d at 178. Here, the motion court found—albeit on the papers—that the jury was not exposed to any outside influences. (See

Sentencing Tr. at 2-5.) It determined that any inference that Samandarov was connected to organized crime could only have come from evidence introduced at trial, and not from the newspapers. (Id.) Both appellate courts affirmed. See Samandarov, 867 N.Y.S.2d at 497-98; Samandarov, 920 N.E.2d at 932-33. This finding was not unreasonable in light of the evidence before the trial court. There had been allusions to organized crime at trial, and Samandarov had failed to provide the court with any non-hearsay evidence that the jury had been exposed to any off-the-record information about the case. The claim is DENIED.

Finally, Samandarov contends that it was an error for the motion court to deny his § 440 motion without a hearing. (See Application at 6.) There are really two components to this claim. First, Samandarov obviously objects to the court's refusal to hold an evidentiary hearing on the § 440.10 motion. Second, his reply brief makes clear that he is also reasserting the prosecutorial misconduct claim that formed the basis of the § 440 motion.

With respect to the first aspect of this claim, there is no recognized free-standing federal right to an evidentiary hearing in a § 440.10 motion proceeding. While the Second Circuit does not seem to have reached the question directly, it has held that a defendant does not have a federal right to an evidentiary hearing on a motion to withdraw a guilty plea. See Hines v. Miller, 318 F.3d 157, 162 (2d Cir. 2003). Moreover, most circuits that have considered the broader issue of whether a federal habeas relief is available for procedural errors that occur in post-conviction state proceedings have held that relief is not available. See Franza v. Stinson, 58 F. Supp. 2d 124, 151-52 (S.D.N.Y. 1999) (citing cases). Applying this rule, courts in this Circuit have denied habeas claims based solely on alleged procedural irregularities occurring in § 440.10 motion proceedings. See, e.g., Diaz v. Greiner, 110 F. Supp. 2d 225, 235-36 (S.D.N.Y. 2000)

(denying habeas claim based on state motion court's alleged failure to hold an evidentiary hearing); Turner v. Sullivan, 661 F. Supp. 535, 540-41 (E.D.N.Y. 1987) (denying habeas claim based on state motion court's alleged failure to provide reasons for its decision). The motion court's refusal to hold an evidentiary hearing on the § 440 motion may have been—as Chief Judge Lippman believed—a violation of state law, but it does not by provide a freestanding basis for relief in federal court.

The underlying prosecutorial misconduct claim, however, is based on federal law. Samandarov asserts that the prosecutors withheld impeachment material from him in violation of the Due Process Clause as interpreted by the Supreme Court in Brady v. Maryland, 373 U.S. 83 (1963). (See Pet'r Reply (Docket Entry # 11) at 1-2.)

There is a question, however, about whether he properly raised this claim in state court prior to filing the Application. In the § 440 motion and on appeal, Samandarov did not cite to Brady or its progeny. He instead relied primarily on People v. Rosario, 173 N.E.2d 881 (N.Y. 1961), a case that predates Brady and was based on state law.

Rosario's holding, now codified, seeN.Y. Crim. Proc. Law § 240.45(1)(a), has been described as evidentiary rather than a federal constitutional rule. See Chandler v. Superintendent of Upstate Corr. Facility, No. 10-CV-2347 (BMC), 2011 U.S. Dist. LEXIS 84761, at *13-14 (E.D.N.Y. Aug. 1, 2011); see also Cruz v. Scully, 716 F. Supp. 766, 769 n.5 (S.D.N.Y. 1989) ("[A] Rosario error is one of state law and thus not subject to review under a petition for a federal writ of habeas corpus."). And, indeed, the respective scopes of Brady and Rosario are not conterminous. Rosario requires that a prosecutor produce to the defendant "[a]ny written or recorded statement . . . made by a person whom the prosecutor intends to call as a witness at trial,

11

and which relates to the subject matter of the witness's testimony." N.Y. Crim Proc. Law § 240.45(1)(a). The scope of Brady, on the other had, is both wider and narrower. Under Brady and its progeny, the prosecution must produce any exculpatory evidence in its possession. See Dist. Att'ys Office v. Osborne, 557 U.S. 52, 61 (2009). This is not to say that the two rules do not often overlap. To the extent that the prosecution suppresses a prior statement of a trial witness that tends to negate the defendant's guilt or punishment, it violates both Rosario and Brady.

Such appear to be the allegations here. While Samandarov did not theorize exactly how the alleged Rosario material would have helped his defense, he did assert—in the § 440 motion papers and in both of his appellate briefs—that there was a "reasonable probability" that the prosecutor's nondisclosure materially contributed to the jury's verdict. (See Samandarov Mem. of Law in Supp. of § 440.10 Mot. at 8; Def.-Appellant's Br. at 39; Appellant's Br. at 38.) The clear implication is that the Rosario material would have been exculpatory. This may be an entirely conclusory allegation, but the court finds that it was sufficient to alert the state courts as to the federal nature of Samadarov's claim.

The motion court rejected Samandarov's prosecutorial misconduct claim (see N.Y. Sup. Ct. Order of Dec. 12, 2006, at 1-3), and that decision was affirmed by the Appellate Division see Samandarov, 867 N.Y.S.2d at 497-98, and the Court of Appeals, see Samandarov, 920 N.E.2d at 933-35.

These decisions were not contrary to federal law. Obviously, for a defendant to succeed on a Brady claim, he must show, among other things, that the allegedly exculpatory evidence actually exists. The motion court found on the record before it that no nondisclosed material

12

existed—Brady or otherwise. It credited Ramirez's statements in his second affidavit that he was never visited a second or third time by police officers; and that, when the officials from the D.A.'s Office met with him before the trial, they did not take notes. This finding was reasonable given the evidence presented in the motion papers. On the one hand, the motion court had a single affidavit from Ramirez. On the other hand, it had a second affidavit from Ramirez, recanting and explaining his statements in the first affidavit; affidavits from members of the D.A.'s Office; time sheets corroborating these assistant affidavits; and proof that the Police Department had closed the case long before the alleged second and third interviews took place. The claim is DENIED.

### Conclusion

For these reasons, the Application is DENIED. No certificate of appealability shall issue because Samandarov has not made a substantial showing of the denial of a constitutional right for the purposes of 28 U.S.C. § 2253.

SO ORDERED.

Dated: Brooklyn, New York
    October 4, 2012

S/ Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge